```
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF MISSISSIPPI
                        EASTERN DIVISION

REGIONS BANK                                           PLAINTIFF


VS.                             CIVIL ACTION NO. 4:09CV32TSL-LRA


IRA S. HERRINGTON                                      DEFENDANT
```

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of plaintiff Regions Bank to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Defendant Ira S. Herrington has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to compel arbitration should be granted.

Ira S. Herrington filed suit in the Circuit Court of Harrison County, Mississippi against Jack H. Wilson d/b/a Wilson Construction, Inc., Regions Bank and Regions' predecessor, AmSouth Bank, for breach of contract, detrimental reliance, negligence and negligent misrepresentation, and against Wilson for fraud, based on the following allegations: In 2006, Herrington agreed to invest $275,000 with Jack Wilson so that Wilson's company, Wilson Construction, could complete a certain subcontract for construction services. As part of their arrangement, it was agreed that the investment funds would be deposited in a checking

account at AmSouth in the name of Wilson Construction Inc., which would be set up such that Herrington would be a signatory and account funds could only be accessed with the signatures of both Wilson and Herrington.  Although AmSouth agreed and represented that account funds could only be accessed with Wilson's and Herrington's signatures, AmSouth improperly disbursed funds from the account without Herrington's consent.  Based on these allegations, Herrington demands judgment in the amount of $625,000 for compensatory damages and $1,500,000 in punitive damages.

Regions has moved to compel arbitration pursuant to the Federal Arbitration Act based on an arbitration provision in a Customer Agreement which Regions contends governs Herrington's relationship with the bank.  The Federal Arbitration Act states "an agreement in writing to submit to arbitration an existing controversy arising out of [a contract evidencing a transaction involving commerce] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2006).

> There is a two-step inquiry to determine whether a party should be compelled to arbitrate. Washington Mut. Fin. v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004).  This Court must first ascertain whether the parties agreed to arbitrate the dispute. Id.  In determining this question, there are two considerations: " '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003).  If it is determined that the parties agreed to arbitrate, this Court must determine

> "whether any federal statute or policy renders the
> claims nonarbitrable." Bailey, 364 F.3d at 263.

JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007). Thus, before a court may compel arbitration, it must first decide if there is a valid, enforceable arbitration agreement. Webb v. Investacorp, Inc., 89 F.3d 252, 257-258 (5th Cir. 1996).

In its present motion to compel arbitration, Regions points out that on July 10, 2006, Herrington signed a signature card for the subject checking account, which signature card recited that by signing same, Herrington agreed to "the terms of the Bank's customer agreement, rules and regulations, and schedule of charges, as now in force and as amended from time to time hereafter . . . ." Regions notes that the AmSouth Customer Agreement in effect in July 2006 which governs the checking account contains the following arbitration provision:

> ARBITRATION PROVISION
>
> ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL.
> Except as expressly provided below, you and we agree
> that either party may elect to resolve by BINDING
> ARBITRATION any controversy, claim, counterclaim,
> dispute or disagreement between you and us, whether
> arising before or after the effective date of this
> Agreement (any "Claim"). This includes, but is not
> limited to, any controversy, claim, counterclaim,
> dispute or disagreement arising out of, in connection
> with or relating to any one or more of the following:
> (1) the interpretation, execution, administration,
> amendment or modification of the Agreement; (2) any
> account; (3) any charge or cost incurred pursuant to the
> Agreement; (4) the collection of any amounts due under
> the Agreement or any account; (5) any alleged contract

3

> or tort arising out of or relating in any way to the
> Agreement, any account, any transaction, any
> advertisement or solicitation, or your business,
> interaction or relationship with us; (6) any breach of
> any provision of the Agreement; (7) any statements or
> representations made to you with respect to the
> Agreement, any account, any transaction, any
> advertisement or solicitation, or your business,
> interaction or relationship with us; or (8) any of the
> foregoing arising out of, in connection with or relating
> to any agreement which relates to the Agreement, any
> account, any transaction or your business, interaction
> or relationship with us. ...
>
> This agreement to arbitrate disputes shall survive the
> closing of your account and shall also survive as to any
> Claim covered within the scope of this Agreement.

Regions notes that the Customer Agreement defines the term "you" to include, in relevant part, "any authorized user of an account," and it points out that by signing the signature card, Herrington was an authorized user of the checking account. Regions thus maintains that because Herrington's claims in the underlying action undeniably fall well within the scope of this arbitration provision, Herrington is obligated to arbitrate, rather than litigate, his claims against Regions.

In response to Regions' motion, Herrington acknowledges he signed a signature card for the account in question, and he agrees that by its terms, the signature card purports to incorporate the Customer Agreement that contains the referenced arbitration provision. However, he argues that he is not a party to the subject Customer Agreement and hence cannot be bound by the arbitration provision therein because "the title of the account in

4

question is not in the name of Ira S. Herrington," but rather is "in the name of a corporation, Wilson Construction, Inc. and the name of the corporation's president," and because the plain language of the signature card indicates that it only binds Wilson Construction, Inc., as it states:

> If this account is a corporation or organization account, …[b]y signing below, the authorized signator(s) for such an account: (a) agrees that the corporation or organization shall be bound by the terms of the Bank's customer agreement, rules and regulations, … as now in force and as amended from time to time hereafter, related to the account noted below; and (b) acknowledges receipt of a copy of the applicable customer agreement now in force.

In fact, however, the signature card signed by Herrington identifies the title of the account as "Wilson Construction Inc. Jay H. Wilson or Ira S. Herrington,"[1] suggesting an account held jointly by joint venturers or partners, Jay H. Wilson and Ira S. Herrington using a d/b/a or, alternatively, as one held by two individual corporate promoters, who never followed through on forming their corporation. Regions notes in its rebuttal that a search of the Mississippi Secretary of State's database reveals no Mississippi corporation known as "Wilson Construction, Inc.," which Regions submits explains why Herrington did not bring his lawsuit against "Wilson Construction, Inc.." but rather against "Jack Wilson d/b/a Wilson Construction, Inc." In short, it

---

[1] The "or Ira S. Herrington" is handwritten, suggesting it was added to the account at some point, presumably at the same time he signed the signature card.

plainly appears from the evidence that the account in question was not a corporate account, as there never was a corporation. It could only have been a proprietary or partnership account. The signature card recites:

> If this account is a proprietorship or partnership account, the person(s) signing below: …(b) agrees to be bound by the terms of the Bank's customer agreement, rules and regulations, … as now in forces and as amended from time to time hereafter, related to the account noted below; and (c) acknowledges receipt of a copy of the applicable customer agreement now in force.
>
> If this is a partnership account, it is also agreed that: (a) each of the persons signing below is a general and not a limited partner, …and that …(b) each signator indicated below has the full authority to represent, sign for and bind the partnership….

Both Jack Wilson's and Ira Herrington's signatures appear above the following recitation:

> The signature(s) appearing above is/are duly authorized signature(s) of this proprietorship/partnership/ corporation/organization/public entity which the Bank will recognize in the payment of funds and the transaction of other business for this account.

Both Wilson and Herrington thus agreed to be bound by the terms of the Customer Agreement.

Nothwithstanding this, Herrington argues that he cannot be required to arbitrate his claims since the signature card he signed contained no reference to arbitration and since arbitration was never even mentioned in the meeting in which he signed the signature card. And, while he admits that the Customer Agreement does contain an arbitration clause, he contends he cannot be held

to the terms of the Customer Agreement or the arbitration provision therein because he was never given a copy of the Customer Agreement and thus did not know what was contained therein. In short, he contends he could not have agreed to arbitrate disputes with AmSouth/Regions when he was completely unaware of any arbitration provision in the Customer Agreement.[2]

The fact that the signature card did not explicitly reference an arbitration obligation, and that there was no discussion of any

---

[2] The court is cognizant of Regions' argument, based on First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995), that this court must defer to the arbitrator the question whether the parties' dispute is subject to arbitration since the parties expressly agreed that "[a]ny dispute regarding whether a particular controversy is subject to arbitration, ... and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire [customer] Agreement, shall be decided by the arbitrator(s)." Herrington's position, however, as the court understands it, is that there was never any Customer Agreement between him and Regions, which in the court's view presents an issue for this court, not the arbitrator. See Will-Drill Resources, Inc. v. Samson Resources Co., 352 F.3d 211, 218 (5th Cir. 2003) ("Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract."). In Will-Drill Resources, the court wrote,
> [W]here the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

Will-Drill Resources, 352 F.3d at 219.

7

arbitration provision at the time Herrington signed the signature card is immaterial. The signature card incorporated the terms of the Customer Agreement, which Herrington admits contained the arbitration provision. And, while Herrington claims he was not provided a copy of the Customer Agreement, this assertion is contrary to and hence foreclosed by the unambiguous language of the signature card, which plainly recites, "the person(s) signing below: acknowledges receipt of a copy of the applicable customer agreement now in force." In <u>Jureczki v. Bank One Texas, N.A.</u>, 75 Fed. Appx. 272, 2003 WL 22121027 (5th Cir. Sept. 15, 2003), Bank One sought to compel its customers, the Jureczkis, to arbitrate their claims against it. The Jureczkis had signed a signature card when they opened their account that incorporated the bank's account rules, which account rules included an arbitration agreement. The court held it was clear that by signing the signature card, the Jureczkis entered into a binding contract, and it rejected their argument that they did not agree to the Account Rules referenced on the signature card because they never received the Account Rules since the signature card which they admitted they signed recited that they had received the Account Rules. 2003 WL 22121027, 2. The court wrote: "This argument is in direct contradiction to language on the signature card which clearly states that the signators have received the Account Rules and agree to be bound by the agreements and terms therein." <u>Id</u>.

Moreover, Herrington is not relieved of the obligation to arbitrate imposed by the Customer Agreement on the basis that he was unaware that the Customer Agreement contained such a provision. On the contrary,

> "Under Mississippi law ... parties to a contract have an inherent duty to read the terms of a contract prior to signing; that is, a party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it."

Swindle v. Harvey, 2009 WL 1758840, 8 (Miss. Ct. App. June 23, 2009) (quoting Bailey v. Estate of Kemp, 955 So. 2d 777, 783 (Miss. 2007)).[3]

In summary, the court concludes that by signing the signature card for the subject account, Herrington contractually bound himself to arbitrate, not litigate, any disputes he might have with Regions. Therefore, it is ordered that Regions' motion to compel arbitration is granted. It is further ordered that Herrington is enjoined from further proceeding with his action

---

[3] The court acknowledges Herrington's argument that a party cannot consent to arbitration by implication. See Union Planters v. Rogers, 912 So. 2d 116, 119 (Miss. 2005) (holding that "[s]ubmitting to arbitration means giving up the right to file a lawsuit in a court of competent jurisdiction. Waiving that right requires more than implied consent."). However, unlike Union Planters in Rogers, Regions herein is not urging a theory of implied consent, but rather it maintains that Herrington's signature on the signature card establishes his express consent to be bound by the terms of a Customer Agreement which contains an arbitration provision.

9

against Regions pending arbitration.

    SO ORDERED this 26th day of June, 2009.


                                                 /s/ Tom S. Lee
                                                 UNITED STATES DISTRICT JUDGE